Michelle Uzeta, Esq., SBN 164402
LAW OFFICE OF MICHELLE UZETA
uzetalaw@gmail.com
michelle@uzetalaw.com
710 S. Myrtle Ave., #306
Monrovia, CA 91016
Ph: (626) 765-7625

Attorney for Plaintiffs
Matthew Baiza, Zoraida Baiza,
and Matthew Damir Baiza

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Matthew Baiza, Zoraida Baiza, and Matthew Damir Baiza,**<br><br>Plaintiffs,<br><br>v.<br><br>**Vital Hospitality LLC, Keshav Khilnani** and Does 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**Complaint for Injunctive Relief and Damages for Violations of:**<br><br>1. Title III of the American's With Disabilities Act, 42 U.S.C. §12182 et seq.;<br>2. California's Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq.; and<br>3. California's Disabled Persons Act, Cal. Civ. Code § 54.1 et seq. |

    Plaintiffs Matthew Baiza, Zoraida Baiza and Matthew Damir Baiza complain of Defendants Vital Hospitality LLC, Keshav Khilnani and Does 1-10, and allege as follows:

# INTRODUCTION

1. Matthew Baiza, Zoraida Baiza and Matthew Damir Baiza (collectively referred to herein as "Plaintiffs") bring this lawsuit alleging that Defendants Vital Hospitality LLC, Keshav Khilnani and Does 1-10 ("Defendants") have failed to ensure that individuals with disabilities who use service dogs have full and equal access to the goods, facilities, programs, services and activities offered to members of the public at the Quality Inn & Suites Redwood Coast they own and operate in Crescent City, California.

2. As a result of Defendants' discriminatory acts and omissions as alleged herein, Plaintiffs have suffered, and will continue to suffer, damages, and have been, and will continue to be, prevented and deterred from accessing the goods, facilities, programs, services, and activities offered at Quality Inn independently and in a manner equal to individuals without disabilities.

3. Through this lawsuit, Plaintiffs seek an injunction requiring Defendants to provide them and similarly situated persons, "full and equal" access to Defendants' public facilities as required by law.

4. Plaintiffs also seek to be compensated for their damages and for Defendants to pay their reasonable attorneys' fees, costs and litigation expenses incurred in enforcing their civil rights.

# PARTIES

5. Plaintiff Matthew Baiza is, and at all times relevant herein was, an individual and California resident.

6. Plaintiff Zoraida Baiza is, and at all times relevant herein was, an individual and California resident.

7. Plaintiff Matthew Damir Baiza is, and at all times relevant herein was, an individual and California resident.

8. Defendant Vital Hospitality LLC is, and at all times relevant herein was, a California limited liability corporation with a primary business office located in the City of La Habra Heights, California.

9. Defendant Keshav Khilnani ("Khilnani") is, and at all times relevant herein was, an individual and resident of California.

10. Plaintiffs are currently unaware of the true identities of DOES 1-10, inclusive, and will seek leave to amend their complaint when the true names, capacities, connections, and responsibilities of such defendants are ascertained.

11. Plaintiffs are informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

**JURISDICTION & VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA.

10. Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq. and the Disabled Persons Act, Cal. Civ. Code § 54.1 et seq., both of which expressly incorporate the ADA. Cal. Civ. Code §§ 51(f), 54.1(d).

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the business and real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

## FACTUAL ALLEGATIONS

12. Plaintiff Matthew Baiza ("Mr. Baiza") is, and at all times relevant herein was an individual with physical and mental impairments.

13. Mr. Baiza is a veteran of the United States Army and has military-related post-traumatic stress disorder.

14. Mr. Baiza also has chronic mobility impairments due to spinal degenerative joint disease, lumbar strain, herniated discs, cervical spine pain, right elbow pain, tendinitis in association with subacromial impingement in both shoulders, and patellofemoral pain syndrome in both knees.

15. Mr. Baiza's disability significantly limits his mobility and balance, ability to perform manual tasks like picking up items, and ability to get up from sitting or supine position, and ability to self-calm and manage stressful situations.

//
//
//
//
//

16. Since 2019 Mr. Baiza has used a service dog individually trained to do work and perform tasks for him, related to his disability, including but not limited to:

    a. Picks up and carries items;

    b. Assists with balance and mobility, provides support while walking and standing;

    c. Provides a brace, assists with moving from sitting / supine position to standing position;

    d. Blocks (positions itself so to create personal space for Mr. Baiza); and

    e. Actively calms Mr. Baiza through trained physical contact when Mr. Baiza is experiencing distress or anxiety.

17. A service animal was prescribed for Mr. Baiza in June 2018.

18. Mr. Baiza currently uses a service dog, a Standard Poodle of calm temperament.

19. Mr. Baiza and his service dog have completed extensive service dog training through Next Step Service Dogs and have successfully passed the Assistance Dogs International public access test. All such training and testing occurred prior to May 2021 and before the incidents upon which this Complaint is based took place.

20. Mr. Baiza's service dog is, and at all times relevant herein was, current in its vaccinations.

21. Mr. Baiza's service dog is, and at all times relevant herein was, licensed through the City of Chula Vista.

22. Plaintiff Zoraida Baiza ("Mrs. Baiza") is the wife of Plaintiff Matthew Baiza.

23. Plaintiff Matthew Damir Baiza is the adult son of Plaintiff Matthew Baiza.

24. Defendants are, and at all times relevant herein were, the owners, operators, lessors, and/or lessees of the Quality Inn & Suites Redwood Coast, located at 100 Walton Street, in Crescent City, California.

25. On May 4, 2021, Plaintiffs visited the Quality Inn for a one night stay during a family trip along the California coast.

26. Plaintiffs had a reservation for a suite containing two king sized beds.

27. Mrs. Baiza entered the Quality Inn first and was greeted by a male front desk clerk. The front desk clerk confirmed Plaintiffs' two king bed suite and proceeded to check Plaintiffs into that suite.

28. After the two bed suite was confirmed and Mrs. Baiza was given the suite room number, Mrs. Baiza informed the front desk clerk as a matter of courtesy that Plaintiffs had a service dog traveling with them.

29. The front desk clerk stated to Mrs. Baiza that the room Plaintiffs had reserved "was not pet friendly".

30. Mrs. Baiza reiterated to the front desk clerk that the dog was not a pet, but rather, was a service animal for her husband, a disabled veteran.

31. The front desk clerk asked Mrs. Baiza to wait so he could confer with someone else regarding the issue and retreated to a back room.

32. After a few moments Defendant Khilnani emerged from the back room and informed Mrs. Baiza that Plaintiffs could not be checked into the two king bed suite they had reserved as it was "not for pets".

33. Mrs. Baiza informed Khilnani, as she had previously advised the front desk clerk, that Plaintiffs did not have a pet, and that Mr. Baiza was a disabled veteran with a service dog.

34. Khilnani ignored what he was being told, and again told Mrs. Baiza that he would not let Plaintiffs use the suite they had reserved because they had "a pet". Khilnani then stated that he could put Plaintiffs in a different room that was "pet friendly" with two queen beds.

35. Mrs. Baiza explained to Khilnani that Plaintiffs had specifically reserved the two king bed suite because they were a family of four.

36. At this point, Mr. Baiza walked into the Quality Inn, approached the reservation counter and asked what was going on. Mrs. Baiza was visibly upset and Mr. Baiza noticed her frustration.

37. Mr. Baiza was accompanied by his service dog. The service dog was, at all times, on a leash, well behaved and under Mr. Baiza's control.

38. Khilnani told Mr. Baiza that Plaintiffs could not stay in the two king bed suite they had reserved because they had "a pet".

39. Khilnani again stated that he could put Plaintiffs in a "pet friendly" room. Mrs. Baiza again informed Khilnani that Mr. Baiza was a disabled veteran and that the dog was a service animal.

40. Mr. Baiza explained to Khilnani that his actions were violating the Americans with Disabilities Act. Khilnani responded that he knew he was breaking the law but that he did not care. Khilnani pointed to a sign on the wall about reserving the right to refuse service to anyone. Khilnani then told Mr. and Mrs. Baiza to leave the premises.

41. Mrs. Baiza did not want to leave the Quality Inn without some documentation that Khilnani had cancelled Plaintiffs' stay as she was afraid he would not reimburse them for the room. Mrs. Baiza asked Khilnani for his name, and he responded that his name was "John Doe".

42. Both Mrs. Baiza and Mr. Baiza requested that Khilnani give them something in writing to confirm that they would be given a refund and not be charged for their cancelled reservation, but Khilnani refused.

43. In light of Khilnani's behavior, Mrs. Baiza took out her phone and started recording. Once Khilnani saw that Mrs. Baiza had taken out her phone, he turned his back on Mr. and Mrs. Baiza and again, refused to answer their questions and instructed them to leave. Khilnani then retreated to the back room.

44. Khilnani emerged a couple of minutes later and said that he had "just" been informed by housekeeping that Plaintiffs room was no longer available because the sink was leaking. It was obvious to Mr. and Mrs. Baiza that Khilnani was lying, as Plaintiffs had already been checked in to their cleaned and ready suite, without issue, minutes before by the front desk employee.

45. Mrs. Baiza decided to call customer service while she and Mr. Baiza were in the lobby because she did not want to be charged for the room by Khilnani if he was denying them their reservation and instructing them to leave.

46. While Mrs. Baiza was on hold, the clerk returned to the front desk to assist another guest. Mrs. Baiza asked the clerk for his name and the name of his manager, but he refused. The clerk then retreated to the back room again.

47. Mrs. Baiza was eventually connected to customer service and spoke to a gentleman who identified himself as "Joe". Joe took Mrs. Baiza's complaint then placed her back on hold while he called the Quality Inn's office to speak to Khilnani.

48. When Joe returned to the line, he informed Mrs. Baiza that the name of the manager of the Quality Inn was Keshav Khilnani.

49. Joe indicated that Khilnani told him the reason Plaintiffs could not check in was due to the room being "damaged by previous guest".

50. Joe also stated that Khilnani was offering Plaintiffs a single king room.

51. Mrs. Baiza told Joe that a single king room was unacceptable as they were a family of four. Joe said he understood, indicated that he would document Mrs. Baiza's complaint, and offered Plaintiffs a future free night stay anywhere they wanted should they want to accept that. Mrs. Baiza stated she would think about it.

52. Only after intervention by customer service staff did Khilnani agree to refund Plaintiffs' reservation.

53. Mr. and Mrs. Baiza left the Quality Inn upset and concerned. It was getting late and they were over 900 miles from home with no confirmed place to stay. They returned to their vehicle and explained to their sons what had occurred.

54. Plaintiffs were denied the goods, services, facilities and accommodations of Quality Inn by Defendants based on Mr. Baiza's disability-related use of a service dog.

55. As the result of Defendants actions, Plaintiffs experienced difficulty, discomfort, embarrassment, frustration and inconvenience.

56. As the result of Defendants actions, Plaintiffs were forced to drive tens of miles south where they were lucky to secure the last available room at a Holiday Inn Express.

57. The incident at the Quality Inn significantly altered Plaintiffs' mood. The refusal of Khilnani to respect Plaintiffs' reservation left them feeling upset and like second class citizens. In fact, Plaintiffs were so upset by what had happened that they cut the remainder of their family trip short, travelling directly home without spending time in Lake Tahoe, San Luis Obispo and Santa Barbara as they had planned.

58.     After the incident at Quality Inn Plaintiffs received an email asking for feedback on their customer service call with "Richard Thomas". Based on this email Plaintiffs believe that the customer service representative with whom they interacted (who represented his name was "Joe"), provided them with a false name.

59.     Plaintiffs have concrete plans to travel the California coast in the future and to stay at the Quality Inn once it's discriminatory policies are modified and employees trained on the rights of patrons with disabilities who use service animals. Plaintiff Matthew Damir Baiza is a college student attending George Fox University in Oregon, and Plaintiffs plan to travel the coast as a family at least 3-4 times a year, to bring Matthew to and from school from Plaintiffs' home in Chula Vista. The Quality Inn is on the Plaintiffs' preferred travel route for travelling to Oregon and meets their budget and room size requirements.

60.     Since the May 4, 2021 incident Plaintiffs have been deterred from returning to the Quality Inn. Unless and until Defendants' discriminatory policies are modified and their employees educated as to the rights of individuals who use service dogs, Plaintiffs will be continue to be denied full and equal access to Quality Inn and will suffer ongoing discrimination by being excluded and deterred from going there.

61.     The nature of Defendants' discrimination, as alleged herein, constitutes an ongoing violation and violation that is capable of repetition. Unless enjoined by this Court, Defendants' discrimination swill result in ongoing and irreparable injury to Plaintiffs and other similarly situated persons.

//
//
//

# FIRST CAUSE OF ACTION

## Title III of the Americans with Disabilities Act

## 42 U.S.C. § 12101 et seq.

62. Plaintiffs re-plead the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately re-pled.

63. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

64. Mr. Baiza is, and at all times relevant herein was, a person with a "disability" as that term is defined under the ADA and its implementing regulations. 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

65. Mrs. Baiza is, and at all times relevant herein was, an individual known to have a spousal relationship or association with Mr. Baiza, who is a qualified individual with a disability within the meaning of the ADA.

66. Matthew Damir Baiza is, and at all times relevant herein was, an individual known to have a father-son relationship or association with Mr. Baiza, who is a qualified individual with a disability within the meaning of the ADA.

67. "[A]n inn, hotel, motel, or other place of lodging" is among the "private entities" which are considered "public accommodations" for purposes of the ADA. 42 U.S.C. § 12181(7)(B).

68. Quality Inn is an "inn, hotel, motel, or other place of lodging" and is therefore a place of "public accommodation" under the ADA.

69. Defendants own, operate and/or lease the Quality Inn.

70. Under the ADA, service animals are not pets.

71. Under the ADA, people with disabilities who use service animals are entitled to be accompanied by their service animal in all areas of an inn, motel or hotel that are open to the public.

72. In acting as herein alleged, Defendants have discriminated against Plaintiffs on the basis of Mr. Baiza's disability in violation of Title III of the ADA. Defendants' discriminatory conduct includes, <u>inter alia</u>:

a. Directly, or through contractual, licensing, or other arrangements, excluding or denying Plaintiffs the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities offered at Quality Inn, on the basis of Mr. Baiza's disability. 42 U.S.C. § 12182(b)(1)(A)(i), 28 C.F.R. § 36.202(a);

b. Providing Plaintiffs goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals. 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b);

c. Failing to modify policies, practices, or procedures to permit the use of a service animal by Mr. Baiza. 28 C.F.R. § 36.302(c)(1);

d. Failing to permit Mr. Baiza to be accompanied by his service animal in all areas of the Quality Inn where members of the public, customers, patrons, or invitees, as relevant, are allowed to go. 28 C.F.R. § 36.302(c)(7);

e. Excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Mrs. Baiza and Matthew Damir Baiza because of the known disability of Mr. Baiza, an

individual with whom Mrs. Baiza and Matthew Damir Baiza are known to have a relationship or association.

73. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188 and 42 U.S.C. § 12205, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
## Unruh Civil Rights Act
## California Civil Code § 51 et seq.

74. Plaintiffs re-plead the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately re-pled.

75. The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code § 51(b).

76. The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

77. Mr. Baiza is, and at all times relevant herein was, a person with a disability under California law. Cal. Gov. Code § 12926.

78. The Quality Inn is a business establishment and, as such, must be operated by Defendants in compliance with the provisions of the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq.

79. In acting as herein alleged, Defendants have violated the Unruh Act by, inter alia, denying, or aiding or inciting the denial of, Mr. Baiza's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at Quality Inn.

Complaint

80. In acting as herein alleged, Defendants have also violated the Unruh Act by denying, or aiding or inciting the denial of, Plaintiffs' right to equal access arising from the provisions of the ADA.

81. Defendants' duties under the Unruh Act are mandatory and long-established. Defendants are deemed to have had knowledge of its duties at all times relevant herein; its failure to carry out said duties as alleged herein was willful and knowing and/or the product of deliberate indifference. Treble damages are warranted.

82. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiffs pray for judgment as set forth below.

## THIRD CAUSE OF ACTION
## California Disabled Persons Act
## California Civil Code § 54 et seq.
### (*Statutory damages and attorneys' fees only*)

83. Plaintiffs re-plead the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately re-pled.

84. The Disabled Persons Act ("CDPA") provides that "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, … and privileges of all … places of public accommodation, … , and other places to which the general public is invited" Cal. Civ. Code § 54.1(a)(1).

85. A violation of the ADA is also a violation of the CDPA. See Cal. Civ. Code, § 54.1(d).

86. The Quality Inn is a place of public accommodation and place to which the general public is invited and, as such, must be operated by Defendants in compliance with the provisions of the CDPA.

87. Defendants have violated the CDPA by, <u>inter alia</u>, denying and/or interfering with Plaintiffs' full and equal access to and use of the accommodations, advantages, facilities and privileges of the Quality Inn.

88. Defendants have also violated the CDPA by denying, or aiding or inciting the denial of, Plaintiffs' right to equal access arising from the provisions of the ADA.

89. Defendants' duties under the CDPA are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged, was willful and knowing and/or the product of deliberate indifference. Treble damages are warranted.

90. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiffs pray for statutory damages and attorneys' fees as set forth below.

**PRAYER**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue an injunction pursuant to the ADA and the Unruh Act:
   a. Ordering Defendants to develop and adopt non-discrimination policies prohibiting discrimination against individuals with disabilities;
   b. Ordering Defendants to modify its policies and practices to avoid discrimination based on an individual's disability-related use of a service dog; and
   c. Ordering Defendants to train its staff and management regarding the rights of people with disabilities who use service dogs and their obligation to avoid discrimination against people with disabilities.

***Note:*** *the Plaintiff is not invoking section 55 of the California Civil Code and is* ***not*** *seeking injunctive relief under the CDPA.*

2. Award Plaintiff general, compensatory, and statutory damages in an amount within the jurisdiction of this court;
3. Award Plaintiff attorneys' fees, litigation expenses and costs of suit, as provided by law; and
4. Award such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

LAW OFFICE OF MICHELLE UZETA

Dated: July 14, 2021

By: *Michelle Uzeta*
Michelle Uzeta
Attorneys for Plaintiff